## Ann M. Gorton v. Department of Employment and Training

[514 A.2d 1063]

No. 85-149

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed July 18, 1986

*Charity A. Downs* of *Conley and Foote*, Middlebury, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Gibson, J.** Claimant appeals a decision of the Vermont Employment Security Board (Board) denying unemployment benefits on the basis that she left her employment without good cause attributable to her last employing unit. We reverse.

Claimant was employed for approximately a year and a half by a Getty service station in Middlebury. She began each shift with a $50 working fund and made cash drops of $100 increments into the safe as additional funds accumulated. On October 25, 1984, claimant worked her normal shift from 11:00 a.m. until 7:00 p.m., and in the course of that day made six $100 drops. During the latter part of the day, she was unable to make any cash drops because of the pace of business, and when she concluded her shift she made four $100 drops, plus one drop of less than $100. The next day when she arrived at work, her manager told her that a cash drop of $100 from the night before was missing from the safe. After a fruitless search for the envelope, the manager told claimant that she had to repay the missing $100 or be suspended until the matter was "cleared up." Claimant resigned the same

day "because she could not afford to repay the $100 nor wait out a suspension without pay."

The regional supervisor arrived in Middlebury on Monday, October 29, 1984, and proceeded with his investigation of the missing cash incident. He talked to claimant and one other suspended employee, as well as other employees at the station. It took the supervisor about a week to complete his investigation and report, in which he determined that claimant was not involved in the missing cash drop. He added that he was willing to rehire claimant because of her excellent work record. Claimant refused reemployment because the manager of the station told her she would rather not have claimant as an employee. The Board found, however, that the differences between claimant and the manager were personal and not related to the employment.

The applicable statute governing eligibility for unemployment compensation benefits is 21 V.S.A. § 1344(a)(2)(A), which states, in pertinent part:

> (a) An individual shall be disqualified for benefits:
>
>     . . . .
>
> (2) For any week benefits are claimed, . . . until he has presented evidence to the satisfaction of the commissioner that he has performed services in employment for a bona fide employer and has had earnings in excess of six times his weekly benefit amount if the commissioner finds that such individual is unemployed because:
>
>     (A) He has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit.

Claimant's case is based on her contention that the choice she faced on Friday, October 26, 1984, of making a $100 payment or suffering indefinite suspension was no true choice at all. Key to her decision to quit was her impression at the time that her suspension was indefinite, and the reasonableness of that conclusion is central to our deliberations.

There is no dispute that on October 26, 1984, her employer was unable to tell her how long her suspension might last. While the investigation that followed in fact took place promptly, the Department concedes that events subsequent to claimant's decision are irrelevant. The Department argues correctly that the events on Friday, October 26, 1984, have to be weighed against claim-

ant's reasonable efforts to resolve the problem that arose on account of the missing envelope. *Rushlow* v. *Department of Employment & Training*, 144 Vt. 328, 331, 476 A.2d 139, 141 (1984); *Dunton* v. *Department of Employment Security*, 136 Vt. 483, 484, 394 A.2d 1129, 1130 (1978).

The Department argues that on that Friday, claimant knew or should have known her suspension would only be temporary; claimant contends that the suspension reasonably appeared to be indefinite. In stressing the word "temporary," the Department emphasizes that claimant should have known that if the investigation turned out favorably, resumption of her employment was assured. Yet, the suspension was "indefinite" in the sense that even her employer viewed the length of time required to settle the matter as indeterminate. Further, it was not the kind of matter whose assessment would be within the experience of claimant.

The Department also argues that claimant jumped the gun and quit precipitously. Claimant replies that from her perspective, with no definite promise of reemployment and no certainty as to the outcome of the investigation, her suspension did indeed look indefinite. The record is clear that claimant asked about the length of her suspension and was unable to obtain an answer. As between an employer with experience in, and direct control over, internal investigations and an employee with no management experience, it was the duty of the employer to give claimant some information about the likely length of suspension and some reassurance that if she turned out to be innocent, her period of unemployment would be brief. In carrying out its internal policy on discovering missing funds, the employer had a duty to explain its ramifications fully, or risk the reasonable inference by an affected employee that her job was in great jeopardy. No such explanation was offered. From the account of the events by employer's own witnesses, it is understandable that claimant believed she was left in the dark as to her future.

At oral argument, the Department stressed that claimant could have sought new employment without quitting, and that she would have been eligible for unemployment benefits while suspended. Not only does such an analysis require the detached calculation not likely to be present when one has been suspended under suspicion of having taken company funds, but it assumes that claimant was prepared to accept a new employment and then

abandon it as soon as her suspension was lifted, a questionable procedure.

The Court agrees that an employee must take reasonable steps to preserve employment; however, we cannot agree with the Board that claimant's conduct was unreasonable. While in hindsight claimant's actions seemed hasty, employer's own policy, combined with little guidance to its employee about the practical consequences of that policy, was the root cause of the haste.

*Reversed and remanded for appropriate computation and award of benefits.*